# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHRISTIAN SMITH,** | : | CIVIL ACTION NO. 1:18-CV-1554 |
| **Plaintiff** | : | |
| | : | (Chief Judge Conner) |
| v. | : | |
| **STANLEY STANISH,** *et al.*, | : | |
| **Defendants** | : | |

## MEMORANDUM

Plaintiff Christian Smith ("Smith") is a former inmate who was housed at all relevant times at the State Correctional Institution, Retreat, in Hunlock Creek, Pennsylvania ("SCI-Retreat").[1] Smith commenced this action pursuant to 42 U.S.C. § 1983. (Doc. 1). The matter is proceeding via an amended complaint. (Doc. 18). Smith names two groups of defendants: Dr. Stanley Stanish ("Stanish") and physician assistant Donald J. O'Brien ("O'Brien"), whom we will refer to as the "medical defendants," and Superintendent Vincent Mooney ("Mooney") and Secretary of Corrections John Wetzel ("Wetzel"), whom we will refer to as the "corrections defendants." Before the court are two Rule 12(b) motions (Docs. 25, 26) to dismiss filed by the corrections defendants and the medical defendants,

---

[1] Smith has been released from custody and is no longer incarcerated. See https://vinelink.com/#/search; see also Doc. 48.

respectively.[2] For the reasons set forth below, the court will grant each pending motion.

I. **Allegations of the Amended Complaint**

Smith alleges that on October 6, 2017, he was exercising in the recreational yard at SCI-Retreat when a stepper bench collapsed and his left leg was caught underneath, causing a 10-centimeter laceration. (Doc. 18 ¶ 9). Smith was transported to Wilkes-Barre General Hospital and received 22 stiches in his leg. (Id. ¶ 10). A doctor at the hospital allegedly opined that Smith may suffer from nerve damage. (Id.)

Upon returning to SCI-Retreat, defendant Stanish treated Smith and advised that he would recheck the stitches in two weeks. (Id. ¶ 12). At the next visit, Stanish removed some stitches but left others in place because they were not ready for removal. (Id. ¶ 15). Smith alleges that he subsequently removed the remaining stiches on his own because "his skin was concealing the stiches" and Stanish did not answer his sick calls. (Id. ¶ 16). Smith further contends that Stanish failed to order physical therapy in a timely manner; that Smith complained to O'Brien on June 3, 2018, about the delay in receiving physical therapy and was

---

[2] Because defendants rely on documents outside the pleadings to support their arguments regarding exhaustion of administrative remedies, the court will address these arguments under the summary judgment standard. By orders dated May 28, 2019, June 5, 2019, and June 11, 2019, we placed the parties on notice that the court may consider exhaustion in its role as fact finder under Small v. Camden County, 728 F.3d 265 (3d Cir. 2013), and that the exhaustion arguments in this case will be analyzed under the rubric of summary judgment. (Docs. 43 (citing Paladino v. Newsome, 885 F.3d 203 (3d Cir. 2018); Doc. 44 (same); Doc. 47). The orders also afforded the parties the opportunity to supplement the record with any additional evidence relevant to exhaustion of administrative remedies. (Docs. 43, 44, 47).

thrown out of O'Brien's office; and that his appointment with physical therapy on July 5, 2018, was inadequate. (Id. ¶¶ 19, 24, 25, 29).

Smith also alleges that the medical defendants denied him medical treatment because he refused to pay the $5.00 co-payment fee. (Id. ¶ 16). He believes that his leg condition requires chronic care and, therefore, he should not have to pay the co-payment fee. (Id. ¶¶ 16, 20, 24). Smith alleges that the medical defendants' actions constitute deliberate indifference in violation of his Eighth Amendment rights. (Id. ¶¶ 17-18).

## II.   Legal Standard

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact" and for which a jury trial would be an empty and unnecessary formality. FED. R. CIV. P. 56(a). The burden of proof is on the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F.Supp.2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The court is to view the evidence "in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor." Thomas v. Cumberland County, 749 F.3d 217, 222 (3d Cir. 2014). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986). Only if this threshold is met may the cause of action proceed. Pappas, 331 F.Supp.2d at 315.

3

## III. Discussion

All defendants argue that Smith failed to properly exhaust his administrative remedies prior to filing the instant action. (Doc. 27 at 3-15; Doc. 49). The Prison Litigation Reform Act of 1996 (the "PLRA") requires a prisoner to pursue all avenues of relief available within the prison's grievance system before bringing a federal civil rights action concerning prison conditions. See 42 U.S.C. § 1997e(a); Booth v. Churner, 206 F.3d 289, 291 (3d Cir. 2000). Section 1997e(a) establishes the requirement of administrative exhaustion:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

The PLRA "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). It has been made clear that the exhaustion requirement is mandatory. See Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007); see also Booth v. Churner, 532 U.S. 731, 741 (2001) (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures"); Nyhuis v. Reno, 204 F.3d 65, 67 (3d Cir. 2000) (same). "[I]t is beyond the power of [any] court . . . to excuse compliance with the exhaustion requirement." Nyhuis, 204 F.3d at 73 (quoting Beeson v. Fishkill Corr. Facility, 28 F. Supp.2d 884, 894-95 (S.D.N.Y. 1998)).

4

To exhaust administrative remedies an inmate must comply with all applicable grievance procedures and rules. Spruill v. Gillis, 372 F.3d 218, 231 (3d Cir. 2004). The PLRA requires not only technical exhaustion of the administrative remedies but also substantial compliance with procedural requirements. Spruill, 372 F.3d at 227-32; see also Nyhuis, 204 F.3d at 77-78. A procedural default by the prisoner, either through late or improper filings, bars the prisoner from bringing a claim in federal court unless equitable considerations warrant review of the claim. Spruill, 372 F.3d at 227-32; see also Camp v. Brennan, 219 F.3d 279 (3d Cir. 2000).

The Department of Corrections ("DOC") has an Inmate Grievance System, set forth in DC-ADM 804, which permits any inmate to seek review of problems that may arise during the course of confinement. See 37 PA. CODE § 93.9(a); PA. DEP'T OF CORR., No. DC-ADM 804. After an attempt to resolve any problems informally, an inmate may submit a written grievance to the Facility's Grievance Coordinator for initial review. This must occur within fifteen days after the events upon which the claims are based. Within fifteen days of an adverse decision by the Grievance Coordinator, an inmate may then appeal to the Facility Manager of the institution. Thereafter, within fifteen days of an adverse decision by the Facility Manager, an inmate may file a final appeal to the Secretary's Office of Inmate Grievances and Appeals. An appeal to final review cannot be completed unless an inmate complies with all established procedures. An inmate must exhaust all three levels of review and comply with all procedural requirements of the grievance review process in order to fully exhaust an issue. See Booth, 206 F.3d at 293 n. 2 (outlining

5

Pennsylvania's grievance review process); Ingram v. SCI Camp Hill, 448 F. App'x 275, 279 (3d Cir. 2011) (same).

### A. Smith's Grievances

The record reflects that Smith filed two grievances concerning his medical treatment: grievance number 713124, which alleged that Smith had not received proper treatment for his leg injury at the prison; and grievance number 741345, which alleged that defendants Stanish and O'Brien failed to order necessary physical therapy for Smith. The procedural history of each grievance follows.

On December 28, 2017, Smith filed grievance number 713124. (Doc. 27-2 at 11; Doc. 31-1 at 1). On January 3, 2018, the Facility Grievance Coordinator denied the grievance. (Doc. 27-2 at 1, 10; Doc. 31-1 at 2). On January 12, 2018, Smith filed an appeal to the Facility Manager. (Doc. 27-2 at 4, 13; Doc. 31-1 at 3). On February 20, 2018, the Facility Manager upheld the denial of the grievance. (Doc. 27-2 at 3, 12; Doc. 31-1 at 4). On March 11, 2018, Smith filed an appeal to final review. (Doc. 27-1 at 7). On March 27, 2018, Keri Moore ("Moore"), SOIGA Grievance Review Officer, responded to Smith's appeal and stated that the appeal was incomplete. (Doc. 27-1 at 6; Doc. 27-2 at 5; Doc. 31-1 at 5). Moore noted that Smith failed to provide the required documents, namely his initial grievance, response thereto, appeal to the Facility Manager, and the Facility Manager's decision. (Doc. 27-1 at 6; Doc. 27-2 at 5; Doc. 31-1 at 5). Moore afforded Smith the opportunity to submit the missing documents and provided the information regarding photocopying services and the DOC policy regarding indigent inmates. (Doc. 27-1 at 6; Doc. 27-2 at 5; Doc. 31-1 at 5).

On May 19, 2018, Smith sent a grievance directly to Moore and identified the grievance as part of grievance number 713124. (Doc. 27-1 at 5). Smith complained about Moore's March 27, 2018 request for copies of his grievances, claiming that he did not have money to make copies and that Moore should have access to the necessary documents. (Id.) Moore responded to Smith's May 19 grievance on May 30, noting that the grievance/correspondence was being filed without further action. (Doc. 27-1 at 3-4; Doc. 27-2 at 14-15; Doc. 31-1 at 10-11). Moore advised Smith that if he was attempting to file a new grievance, he must submit an initial grievance to the Facility Grievance Coordinator. (Doc. 27-1 at 3-4; Doc. 27-2 at 14-15; Doc. 31-1 at 10-11). Moore also explained that the SOIGA does not have access to actual grievance documents through the grievance tracking system and that she had given Smith the additional opportunity to provide the necessary documents to prevent the dismissal of his appeal. (Doc. 27-1 at 3-4; Doc. 27-2 at 14-15; Doc. 31-1 at 10-11).

On June 4, 2018, Smith sent a grievance directly to Susan Delescavage, the Acting Corrections Superintendent's Assistant, and identified the grievance as part of grievance number 713124. (Doc. 27-2 at 7; Doc. 31-1 at 6). Smith raised new complaints regarding the medical care provided by defendant O'Brien. (Id.) On June 5, 2018, Delescavage returned the grievance to Smith and advised him to submit a new grievance because grievance number 713124 was previously appealed to defendant Mooney. (Doc. 27-2 at 6; Doc. 31-1 at 7). On June 6, 2018, Smith wrote to Delescavage and stated that, although he had appealed grievance number 713124 to defendant Mooney, this "new grievance is still pertaining to my medical grievance # 713124 for more issues that I am having until I hear back from

Mechanicsburg Central Office [SOIGA]." (Doc. 27-2 at 9; Doc. 31-1 at 8). That same day, Delescavage responded to Smith and forwarded a courtesy copy of the information to the SOIGA. (Doc. 27-1 at 8; Doc. 31-1 at 9).

On July 13, 2018, Smith sent another grievance directly to Moore and identified the grievance as part of grievance number 713124. (Doc. 27-1 at 2). Smith stated that he never refused any medical treatment, and he restated his complaints regarding the treatment of his leg by defendants Stanish and O'Brien. The SOIGA received this grievance on July 18, 2018. (Id.) On August 2, 2018, the SOIGA dismissed Smith's appeal, noting that the appeal was not timely and that he failed to provide the proper documentation. (Doc. 27-1 at 1; Doc. 31-1 at 12).

On June 7, 2018, Smith filed his second grievance, number 741345. (Doc. 27-2 at 20; Doc. 31-2 at 1; Doc. 49-1 at 2). On June 19, 2018, the Facility Grievance Coordinator denied the grievance. (Doc. 27-2 at 19; Doc. 31-2 at 2; Doc. 49-1 at 3). On June 21, 2018, Smith appealed the denial of this grievance. (Doc. 27-2 at 18; Doc. 31-2 at 3; Doc. 49-1 at 4). The Superintendent's Office received the appeal on June 25, 2018. (See Doc. 27-2 at 18; Doc. 31-2 at 3; Doc. 49-1 at 4). On July 12, 2018, within fifteen working days of June 25, 2018, the Facility Manager denied the grievance appeal. (Doc. 27-2 at 17; Doc. 49-1 at 5). Smith did not appeal this grievance to the SOIGA.

### B. Failure to Exhaust

The record establishes that Smith failed to exhaust his administrative remedies with respect to grievance numbers 713124 and 741345. The PLRA mandates that inmates *properly* exhaust their administrative remedies before filing

8

suit in federal court, a requirement which demands compliance with an agency's deadlines and procedural rules. Woodford, 548 U.S. at 90-93. Smith did not do so in this case. Grievance number 713124 was ultimately dismissed by the SOIGA as untimely and for failure to provide required documentation, without a decision on the merits. Grievance number 741345 was not appealed to final review. Smith has not presented any evidence to refute these facts.

Under certain circumstances, administrative remedies may not be effectively available to an inmate, preventing a timely pursuit of the prison grievance process. See, e.g., Camp, 219 F.3d at 281; Robinson v. Superintendent Rockview SCI, 831 F.3d 148, 154 (3d Cir. 2016) (holding that prison officials rendered plaintiff's administrative remedies unavailable when they failed to timely respond to his grievance and ignored his follow-up requests for a decision). The record simply does not support a finding that the administrative process was unavailable to Smith. To the contrary, it establishes that Smith had ready access to the administrative remedy process.

It is quite clear that Smith failed to exhaust administrative remedies before initiating the instant action. Moreover, Smith has not demonstrated that his failure

to fully pursue such administrative relief should be excused. Thus, Smith's claims are barred on administrative exhaustion grounds, and defendants are entitled to summary judgment.[3]

## IV. Conclusion

For the reasons set forth above, the court will grant defendants' motions (Docs. 25, 26) and enter summary judgment in their favor. An appropriate order shall issue.

      /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated: July 31, 2019

---

[3] Because Smith did not fully exhaust his administrative remedies, we need not address the merits of his medical deliberate indifference claims. We note, however, that Smith also makes passing reference to alleged failures by defendants Mooney and Wetzel to respond to Smith's grievances and appeals. (Doc. 18 ¶¶ 28, 39). We do not read Smith's amended complaint as asserting a freestanding cause of action based on a purported failure to respond to grievances and appeals. Any such claim would be wholly without merit—it is clear that Mooney responded to Smith's appeals and that the SOIGA responded to the one grievance appealed to final review. (See Doc. 31-1 at 4; Doc. 31-2 at 4).